UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SHARIEFF MASSEY,

                Plaintiff,                Case No. 1:13-cv-1161

v.                                            Honorable Janet T. Neff

THOMAS COMBS et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Sharieff Massey presently is incarcerated with the Michigan Department of Corrections (MDOC) at the West Shoreline Correctional Facility. He sues the following employees of the Michigan Parole Board (MPB): MPB Chairperson Thomas Combs; MPB Member Stephen DeBoer; and MPB Department Managers Kelly Lutz and Chris Chrysler.

On October 11, 2007, the Kent County Circuit Court sentenced Plaintiff to two prison terms of one to fourteen years, after Plaintiff pleaded guilty to two counts of uttering and publishing, MICH. COMP. LAWS § 750.249. Plaintiff's complaint concerns the preparation of his Parole Guidelines Gridsheet, which scored five negative points for mental health variables under MICH. ADMIN. CODE r. 791.7716,[1] based on a finding of guilt on a prison misconduct charge for sexual assault. Plaintiff alleges that the improper score resulted in an average probability of parole, as opposed to a high probability of parole. On May 6, 2013, Plaintiff was denied parole for the fifth time since 2008. Plaintiff filed a request for reconsideration on May 7, 2013, but he has not yet received a response.

On May 10, 2013, Plaintiff filed a grievance about his parole denial. He alleged in the grievance and alleges in his complaint that, during Plaintiff's parole interview, Defendant DeBoer was unable to state the reason for the five-point deduction. He also complains that DeBoer became hostile and terminated the parole interview abruptly after Plaintiff revealed that he had been

---

[1]MICH. ADMIN. CODE r. 791.7716(3)(a)(v) provides, in relevant part, as follows:

(3) A parole guideline score shall be based on a combination of the length of time the prisoner has been incarcerated for the offense for which parole is being considered and each of following factors:
. . .
(g) The prisoner's mental health as reflected by the following:
. . .
(v) A history of physical or sexual assault related to a compulsive, deviant, or psychotic mental state.

- 2 -

terminated from the Sex Offender Program (SOP) several days before his parole interview. Plaintiff contends that both he and his mother told DeBoer about a therapy program available to Plaintiff in the community. Defendant DeBoer, however, refused to consider the option and yelled that the interview was over.

Defendants Lutz and Chrysler denied the Step I grievance on May 17, 2013, indicating that the five-point deduction was based on Plaintiff having been found guilty of a sexual assault misconduct and on the May 22, 2012 report issued by a Qualified Mental Health Professional, which found Plaintiff at a high risk of re-offending. Plaintiff argues that his conduct did not warrant application of the rule. In addition, he objected to the MPB's reliance on the Vermont Assessment for Sex Offender Risk (VASPR) and the Static 99 test, both of which, he alleges, are only to be used for prisoners convicted of a sexual offense in a court of law. Defendant Combs denied Plaintiff's grievance at Step II on June 24, 2013. Both the Step I and Step II grievances mentioned that Plaintiff had been referred to the SOP since April 7, 2011, but he had not yet completed the program. Plaintiff filed a Step III grievance on July 5, 2013, however he has not yet received a response to his grievance.

Plaintiff alleges that Defendants' actions violated the Due Process Clause of the Fourteenth Amendment, as well as the Michigan Constitution and MDOC policy. For relief, he seeks an injunction barring the MPB from deducting the five-point, mental-health score from his total parole guidelines score. He also seeks compensatory and punitive damages.

**Discussion**

I.        Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff claims that Defendants violated his due process rights by improperly scoring his Parole Guidelines Gridsheet and failing to follow proper procedures in denying his parole. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the

Michigan system does not create a liberty interest in parole. In a recent published decision, the Sixth Circuit reiterated the continuing validity of *Sweeton*. *See Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Plaintiff counters this well-established law by citing *Williams v. Berrios*, No. 06-13303, 2007 WL485348 (E.D. Mich. Feb. 9, 2007) (Ord. Granting in Part and Denying in Part Mot. to Dismiss). Relying on *Wilkinson v. Dotson*, 329 F.3d 463, 471 (6th Cir. 2003), *aff'd*, 541 U.S. 935 (2005), the *Williams* court held that, despite the fact that the prisoner had no liberty interest in parole, he had a right to a fair parole proceeding. *Williams*, No. 06-13303, slip op. at 6. *Wilkinson*, however, does not support the *Williams* decision. The *Wilkinson* Court held only that a civil rights action that challenged parole procedures and sought a new hearing – as opposed to release on parole – was not barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The *Wilkinson* Court merely assumed without deciding that, in Ohio, the prisoner had a liberty interest in his parole and, therefore, an interest in constitutionally sufficient procedures. In contrast, as previously discussed, a Michigan prisoner has no liberty interest in parole. *Crump*, 657 F.3d at 404. "Without a protected liberty or property interest, there can be no federal procedural due process claim."

*Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). The Court therefore declines to follow the 2007 unpublished order in *Williams*.

Until Plaintiff has served his 14-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to grant Plaintiff parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

### B. State Law

Plaintiff argues that Defendants' conduct also violates the Michigan Constitution and the Michigan parole procedures set forth in MICH. DEP'T OF CORR., Policy Directive 06.05.100. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely

discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: __November 25, 2013__           /s/ Janet T. Neff
                                                         Janet T. Neff
                                                         United States District Judge